723 F.2d 958
 34 Fair Empl.Prac.Cas. 63, 33 Empl. Prac.
Dec. P 33,987,
232 U.S.App.D.C. 432
 MINORITY EMPLOYEES AT NASA (MEAN), Diane A. Moore, Appellants,
v.
James M. BEGGS, Administrator, National Aeronautics and
Space Administration.
MINORITY EMPLOYEES AT NASA (MEAN), Gloria Taliaferro, Appellants,
v.
James M. BEGGS, Administrator, National Aeronautics and
Space Administration, et al.
MINORITY EMPLOYEES AT NASA (MEAN), Rose Mary Ferguson, Appellants,
v.
James M. BEGGS, Administrator, National Aeronautics and
Space Administration, et al.
 Nos. 81-1349, 82-1915 and 82-2367.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 2, 1983.
Decided Dec. 20, 1983.
 
 Appeal from the United States District Court for the District of Columbia (Civil Action No. 74-1832).
 Thomas J. Hearity, Rachel B. Trinder and Roderic V.O. Boggs, Washington, D.C., with whom Raymond J. Rasenberger, Richard J. Flynn and Julie D. Nelson, Washington, D.C., were on brief, for appellants in Nos. 82-1915 and 82-2367. Joseph M. Sellers, Washington, D.C., also entered an appearance for appellants in Nos. 82-1915 and 82-2367.
 John W. Davis, Washington, D.C., for appellant in No. 81-1349.
 John W. Polk and Patricia Carter, Asst. U.S. Attys., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees in Nos. 81-1349, 82-1915 and 82-2367. Kenneth M. Raisler, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellees.
 Before TAMM and MIKVA, Circuit Judges, and BAZELON, Senior Circuit Judge.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 These consolidated appeals arise from a lawsuit alleging employment discrimination which the three individual appellants and the organization Minority Employees at NASA (MEAN) filed against NASA in 1974. After the lawsuit was certified as a class action, the parties entered into a Stipulation of Settlement and Consent Order (the Settlement) which the district court approved in 1978. The Settlement provided class-wide relief and procedures for resolving fourteen individual claims of racial discrimination. The only issues currently before the court involve the resolution of three of those individual claims. Pursuant to the Settlement, appellants' claims were tried before a U.S. Magistrate who recommended judgment for NASA in all three cases. The district court adopted the magistrate's findings of fact and conclusions of law in their entirety. All three appellants challenge dismissal of their individual Title VII claims. They also join together in challenging the magistrate's order, approved by the district court, which limited the substantive scope of discovery permitted in the individual discrimination cases.
 
 
 2
 We conclude that the district court's order limiting the substantive scope of discovery was incorrect as a matter of law. Because the discovery limitation may have denied appellant Gloria Taliaferro access to information that was central to her claim of disparate treatment, we remand her claim for further proceedings. Our reversal of the court's discovery order, however, does not affect the claims of appellants Diane Moore and Rose Mary Ferguson. Neither Ms. Moore nor Ms. Ferguson demonstrated how reversal of the discovery order might lead to the discovery of information which could alter the magistrate's conclusions. In fact, Ms. Ferguson apparently does not dispute the government's claim that she never even filed any requests for answers to interrogatories or for production of documents. Accordingly, we affirm the district court's orders dismissing the claims of appellants Moore and Ferguson. The magistrate's findings of fact in those two cases, adopted in full by the district court, are not clearly erroneous and therefore must be upheld. See Fed.R.Civ.P. 52(a); Kinsey v. First Regional Securities, Inc., 557 F.2d 830, 835 (D.C.Cir.1977).
 
 THE DISCOVERY ORDER
 
 3
 The Settlement authorized fourteen named individuals to bring discrimination claims against NASA pursuant to specified procedures. Two additional claimants subsequently were added to the list by order of the district court. Pursuant to those procedures, nine of the sixteen claimants filed formal claims with a Special Master (the magistrate) who was appointed by the district court. The Settlement expressly limited both the time in which discovery could be taken and the number of depositions, interrogatories, and requests for production of documents permitted "as of right." See Settlement Sections XIII C (4)-(6) at Joint Appendix (JA) 12. All of the claimants filed requests for discovery beyond that permitted as of right under the Settlement. While these motions to compel discovery were before the magistrate, NASA filed a comprehensive statement arguing that the Settlement limited discovery to information relating to the specific positions and specific individual involved in a given claim. The magistrate agreed with NASA's general characterization of the Settlement. He issued an order limiting claimants' discovery of statistical and other comparative information to that which was "directly relevant to individual claims ... and confined to the department, division, or section in which the alleged discrimination occurred." JA 70 (emphasis in original). Following a motion for reconsideration by the claimants, the district court upheld the magistrate's interpretation of the Settlement.
 
 
 4
 Because the order limiting discovery was based on the magistrate's construction of the Settlement and did not constitute an exercise of his discretion, the order poses a legal question which we must review de novo on appeal. It is undisputed that the purpose of the Settlement was to "avoid unnecessary litigation" and to place explicit procedural limitations on the scope of discovery permitted each individual claimant. See Settlement, Sections I, III(C)(4)-(6) at JA 3, 12. But the magistrate improperly inferred from those limitations that the parties also intended to limit the substantive scope of discovery. His conclusion rested in large part on a sentence in the Settlement which provided that any information sought through "a request for production of documents or set of interrogatories ... be relevant to the claim of the individual claimant." Id., Section XIII(C)(6) at JA 12 (emphasis added). The magistrate concluded that this "relevance" requirement limited the substantive scope of discovery otherwise permissible under the Federal Rules of Civil Procedure: "It is apparent ... that if ... all discovery relevant to any Title VII action in the federal courts were permitted, both the purposes behind this stipulation and the reasons for entering into settlement agreements, in general, would be defeated." JA 68.
 
 
 5
 We disagree with the magistrate's interpretation of the Settlement. The primary flaw in his analysis was his failure to reconcile the relevance requirement with another section of the Settlement which provided that the individual discrimination claims "be resolved in accordance with the law governing Title VII actions in the federal courts." Settlement, Section XIII(C)(3) at JA 12. A brief overview of the plaintiff's burden of proof in an individual Title VII case provides some insight into the meaning of this provision of the Settlement.
 
 
 6
 Although the plaintiff bears the ultimate burden of proof in a disparate treatment case, the Supreme Court has set forth "intermediate evidentiary burdens ... to bring the litigants and the court expeditiously and fairly to th[e] ultimate question [of intentional discrimination]." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The plaintiff has the initial burden of demonstrating by a preponderance of the evidence a prima facie case of discrimination. This burden is not onerous, and creates a rebuttable presumption of discrimination. Id. at 253-54, 101 S.Ct. at 1093-94. See McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (describing the factors that go into making a prima facie case of intentional discrimination). The burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for its action. This is a burden of production of evidence, not of persuasion, and rebuts the presumption created by the plaintiff's prima facie case. Once the employer has produced evidence of a legitimate reason for its action, the burden shifts back to the plaintiff to prove that the articulated reasons are a pretext for discrimination. "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095.
 
 
 7
 It is well established that statistical data and comparative information concerning an employer's treatment of minorities is relevant evidence in an individual discrimination claim against that employer. Such evidence can be used by a plaintiff to make out a prima facie case of discrimination or to show that the employer's stated reasons for the challenged actions are a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. at 1825 (statistical evidence concerning an employer's "general policy and practice with respect to minority employment" can be used to prove pretext) (footnote omitted). This court has held that "statistical evidence may establish a prima facie case of employment discrimination in an individual case" even though such data is generally used in class action cases to show a pattern or practice of discrimination. Califano v. Davis, 613 F.2d 957, 962 (D.C.Cir.1979). Numerous other cases have held that statistical and comparative information are relevant in proving an individual claim of discrimination. See, e.g., Lynn v. Regents of the University of California, 656 F.2d 1337, 1342-43 (9th Cir.1981), cert. denied, --- U.S. ----, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982); Kinsey v. First Regional Securities, Inc., 557 F.2d 830, 839 (D.C.Cir.1977); Rich v. Martin Marietta Corp., 522 F.2d 333, 344-45 (10th Cir.1975). Statistical and other comparative information is clearly "relevant to the claim" of an individual plaintiff in a Title VII case. In light of the express provision in the Settlement that Title VII law should apply to the resolution of the individual claims, the district court erred when it approved the magistrate's construction of the settlement, thereby preventing claimants from using such information.
 
 GLORIA TALIAFERRO'S CLAIM
 
 8
 Gloria Taliaferro is the only appellant who has shown that the magistrate's improper limitation on discovery denied her information that was critical to proving her discrimination claim. Ms. Taliaferro, an outspoken civil rights activist at NASA, was recommended for promotion in 1972 and 1973. Both years she was denied promotions and she alleges that those denials constituted unlawful racial discrimination. The magistrate concluded that Ms. Taliaferro had made out a prima facie case of discrimination but failed to prove that the reasons offered by NASA to explain its failure to promote her were pretextual. We cannot say that his findings, based on the evidence before him, were clearly erroneous. But the effect of the discovery order was to deny Ms. Taliaferro information that could be highly probative of whether NASA's articulated reasons were a pretext for discrimination.
 
 
 9
 NASA did not dispute that appellant was qualified for a promotion, but offered two other reasons to explain its failure to promote her. NASA's primary justification was that Ms. Taliaferro's position lacked "promotion potential" under the civil service rules and that her position had to be reclassified before she could be promoted. NASA also relied on an agency-wide hiring and promotion freeze during the relevant time period to explain its decision not to promote her.
 
 
 10
 Appellant worked in a department at NASA Headquarters which had fewer than ten employees during the relevant time period. To prove that NASA's stated reasons for failing to promote her were pretextual, appellant made discovery requests concerning white employees outside her department who were promoted in 1972 and 1973. If NASA promoted white employees without promotion potential or during the hiring freeze, this information would be highly relevant to Ms. Taliaferro's claim of intentional discrimination. But the discovery order precluded her from obtaining that information. This erroneous interpretation of the Settlement precluded Ms. Taliaferro from obtaining comparative information that goes to the heart of her claim against NASA.
 
 CONCLUSION
 
 11
 On remand, the magistrate should consider Ms. Taliaferro's specific discovery requests in light of the proper scope of discovery which we conclude is permitted under the Settlement. We recognize that the magistrate has considerable discretion in ruling on discovery requests. But we emphasize that it is an abuse of discretion to prevent a Title VII plaintiff from obtaining information that is vital to proving a discrimination claim.
 
 
 12
 We affirm the district court's orders concerning Diane Moore and Rose Mary Ferguson. We vacate the district court's orders limiting the scope of discovery and dismissing Gloria Taliaferro's claim and remand for further proceedings consistent with the opinion.
 
 
 13
 It is so ordered.