David Leslie **GIBSON**, Angelo **Rios** and Ronald O. **Hope**, Plaintiffs,

v.

**AMERICAN BROADCASTING COMPANIES, INC.,** Robert **Benson**, Peter **Flannery**, Richard **Dressel** and Jeffrey **Sprung**, Defendants.

No. 82 Civ. 5249 (RWS).

United States District Court, S.D. New York.

Nov. 10, 1988.

Warren J. Bennia, New York City, for plaintiffs.

Epstein Becker & Green, P.C., New York City, Philip M. Berkowitz, Rhonda J. Falk, of counsel, for defendants.

OPINION

SWEET, District Judge.

Plaintiffs David Leslie Gibson ("Gibson") and Ronald O. Hope ("Hope") have moved pursuant to Local Civil Rule 3(j) for reargument of the May 3, 1988 opinion of the Honorable Richard J. Daronco granting summary judgment in favor of defendant American Broadcasting Companies, Inc. ("ABC"), Robert Benson ("Benson"), Peter Flannery ("Flannery"), Richard Dressel ("Dressel") and Jeffrey Sprung ("Sprung"), and for an order granting reconsideration and a trial on the issue of liability with respect to the aforesaid claims pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. Defendants have moved for reargument of the opinion denying their motion for summary judgment of the claims of plaintiff Angelo Rios ("Rios"). For the reasons set forth below, both plaintiffs' and defendants' motions are denied.

The facts of this case are set forth in the May 3, 1988 Memorandum Order (the "Order") of the Honorable Richard J. Daronco, *Gibson v. American Broadcasting Cos., Inc.*, 687 F.Supp. 786 (S.D.N.Y.1988) familiarity with which is assumed.

*Discussion*

In order to grant a motion to reargue pursuant to Rule 3(j), the moving party "must demonstrate that the court overlooked controlling decisions or factual matters that were put before the court on the underlying motion." *Ashley Meadows Farm, Inc. v. American Horse Shows Association, Inc.*, 624 F.Supp. 856, 857 (S.D.

N.Y.1985) (Sweet, J.). *See also Caleb & Co. v. E.I. DuPont De Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y.1985) (Sweet, J.) ("The standard for granting a motion for reargument is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court. Such motions, therefore, may be granted only where the court has overlooked matters or controlling decisions....").

*Hope*

■ Hope alleged that he was the object of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1982) ("Title VII") because his assignment to editorial duties was unfairly delayed by defendants because of his race. Judge Daronco granted summary judgment for defendants on the grounds that Hope failed to establish that he was qualified to receive acting editor duties sooner. Therefore, Hope failed to meet his burden of establishing a prima facie case of discrimination. Further, Judge Daronco held that even if Hope did establish a prima facie case of discrimination, he did not offer evidence that the defendants' articulated reason for delaying Hope's editing duties—"that editorial positions are awarded based on a consideration of the needs of ABC Radio News at the time, a determination by ABC as to who would best fill that need, and the schedule of available personnel," Order at 15, was pretextual.[1]

Hope asserts that Judge Daronco overlooked material facts in his Order. Specifically, Hope claims that the evaluation by defendants of his performance in 1982 as average to below average did not reflect a level of performance indicating that he was not qualified to receive acting editing assignments sooner, that the discreet criticisms which he received were no worse and

in many cases better than those given to Caucasian newswriters who received editing duties sooner, and that he did not receive any criticism on his performance in editorial assignments between November 1976 and August 1981. Thus, contrary to the May Order, Hope argues that he established that he was qualified to take on editorial responsibilities and was similarly situated to Caucasians who received acting editor duties at an earlier date. Furthermore, Hope maintains that he addressed the issue of pretext by showing that the Caucasians who were promoted also received criticisms of their work, thus denying Flannery's claim that his work was the weakest of all newswriters in his class.

There are no grounds for reargument of summary judgment on Hope's claim. Even if Hope has established a prima facie case of discrimination, he has failed to present an issue of fact that defendants' reasons for delaying his editorial assignments are pretexts for discrimination. Defendants' grounds for delaying Hope's assignments are that Hope was less qualified than other candidates, and that ABC assigns jobs to people based upon ABC's scheduling needs. In his attempt to establish that these reasons are pretextual, Hope presents as evidence only that the performance of Caucasians who were promoted earlier was criticized in a manner similar to his performance.

This case presents the difficulties related to the application of *Lieberman v. Gant*, 630 F.2d 60 (2d Cir.1980) cited by the defendants. In *Lieberman*, the Court of Appeals for the Second Circuit held that comparative evidence was properly excluded from the trial of a case in which Lieberman, a woman, sued the University of Connecticut for denial of tenure in violation of

---

1. To establish a *prima facie* case of race discrimination in promotions, plaintiff must demonstrate (i) that he belongs to a racial minority, (ii) that he applied and was qualified for a particular position, (iii) that he was denied a position, and (iv) that others similarly situated got the position. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

After a *prima facie* case has been established, the burden shifts to defendants to rebut that showing by articulating a legitimate reason for the treatment plaintiff received. If defendants sustain the burden, the plaintiff must prove that the reasons articulated by defendants were only a pretext for discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas, supra.*

Title VII on the grounds that she was a woman and an advocate of women's rights. To prove that the University's reasons for refusing tenure were pretextual, Lieberman attempted to introduce evidence comparing herself to male colleagues who had received tenure. In upholding the trial court's exclusion of the evidence, the Court of Appeals held that comparative evidence was not relevant where the comparison was incomplete. *Lieberman v. Gant*, 630 F.2d at 68.

■ Although this case is not a tenure case, the holding in *Lieberman* applies: to be admissible to prove pretext, comparative evidence must be complete. The evidence Hope submits consists of discreet criticisms of ABC newswriters rather than comprehensive evaluations. Thus, the evidence fails to establish that the reasons given by defendants for delaying Hope's editorial assignments are pretextual.

■ In addition to this problem of comparative evidence is the fact that Hope cannot set his own standard for comparing his performance with that of other newswriters. *See Lieberman v. Gant*, 630 F.2d at 67 ("when a decision to ... promote ... one person rather than another is reasonably attributable to an honest even though partially subjective evaluation of their qualifications, no inference of discrimination can be drawn."). *See also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981) ("the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria"); *Davis v. State University of New York*, 802 F.2d 638, 641 (2d Cir.1986) ("The employer need not prove that the person promoted had superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory."). Hope has failed to offer evidence raising an issue of fact as to whether defendant's reasons were pretextual. Therefore, there is no basis for reargument of Hope's claim.

*Gibson*

■ Gibson alleges that he has been denied weekend days off because of his race in violation of Title VII. He claims that, contrary to the May Order, he proved that he was qualified to work a schedule with at least one weekend day off. Gibson bases this assertion largely on two grounds. First, he argues that the fact that for four months in 1980 he worked the afternoon drive shift when the audience is the largest proved that he was qualified for weekends off. And second, he claims that the fact that he was employed continuously for eleven years while other on-air correspondents with weekend days off were terminated for poor performance proves that he was qualified to have weekends off. Similarly, according to Gibson, the fact that another on-air correspondent was given a contract which provided for weekends off, but was subsequently let go because of unsatisfactory performance, proves that he was qualified for a contract providing for weekends off.

Defendants contend that Gibson has failed to show that Judge Daronco, in rendering his decision, overlooked facts or law that would require reargument. According to defendants, Gibson was not given Saturdays or Sundays off because he was consistently viewed by management as the weakest or among the weakest of the on-air correspondents in his network.

Even if Gibson has established that he was qualified, and this court does not take a position on this question, Gibson did not raise an issue of fact as to whether defendants' reason for not giving him his preferred schedule was pretextual. As in the case of plaintiff Hope, *supra*, Gibson cannot use evidence comparing aspects of his record to those who received weekend days off to establish pretext unless the comparison is complete. *See Lieberman v. Gant*, 630 F.2d at 68. Gibson has thus failed to offer admissible evidence to raise an issue of fact regarding pretext. Gibson's motion to reargue the summary judgment issue is, therefore, denied.

*Rios*

■ Rios alleges that defendants denied him a job as a newswriter because of his national origin in violation of Title VII. Judge Daronco denied summary judgment for defendants on Rios's claim. Defendants argue that the Court overlooked material and disputed facts, and thus move for reargument of their summary judgment motion. According to Judge Daronco, ABC's reason for denying Rios the job was that he lacked necessary qualifications, specifically, he did not have several years of experience with a major network. However, nine Caucasians who were hired as newswriters also lacked this experience. Because defendants failed to meet their burden of supplying a legitimate, non-discriminatory rationale for making exceptions for the Caucasians, summary judgment in defendants' favor was denied.

According to defendants, Judge Daronco overlooked two material facts. First, that the experience requirement was waived for two minority members, and second, that ABC had legitimate reasons for hiring the nine Caucasians. Specifically, defendants explain that exceptions were made for three Caucasians because they were hired during an exceptional period, as Judge Daronco noted, when ABC was adding two additional networks; four of them had at least three years of newswriting experience in radio news; one was considered to exhibit the skills and abilities of a "superstar" newswriter; and one was strongly recommended by ABC's international assignment manager (although other ABC personnel did not believe that he was qualified to be a newswriter).

It is questionable, as Rios points out, that ABC waived the experience requirements for minority members, for the two singled out by ABC were, at least arguably, qualified under ABC's standards. Even more important, the two minority members singled out by defendants were hired *after* Rios brought this suit. Therefore, this is not a ground for granting reargument.

However, the reasons given by defendants as to why exceptions were made for Caucasians but not for Rios are not sufficient to remove a question of fact that defendants' reasons were not pretextual. In the case of seven of the Caucasians, defendants have met their burden of articulating legitimate, nondiscriminatory reasons for hiring them despite their lack of qualifications: specifically, for the three who were hired during the exceptional period, Order at 32, and for the four who had three years of experience. Further, as to the Caucasian who was hired because he was a newswriter "superstar," defendants have arguably met their burden. However, defendants have not offered a clear and legitimate reason to explain why an otherwise unqualified Caucasian was hired when they say that ABC's international manager recommended him. As the Supreme Court explained in *Texas Dept. of Community Affairs v. Burdine,* in meeting their burden of rebutting a presumption of discrimination, defendants must "clearly set forth, through the introduction of admissible evidence, the reasons for plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Furthermore, the proffered reason must "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255–56, 101 S.Ct. at 1094–95. ABC's reason for hiring this ninth Caucasian is neither clear nor specific; thus, ABC has failed to remove a question of fact that defendant's reasons were not pretextual. Summary judgment was rightly denied.

*Conclusion*

Plaintiffs' and defendants' motions for reargument of defendants' summary judgment claims are denied. Discovery will be completed by January 11 and the pretrial order filed by January 18, 1989.

It is so ordered.